UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTICT OF NEW YORK
_____

JOHN DOE,

     Plaintiff,

v.

CITIGROUP GLOBAL MARKETS,  INC.,

     Defendant.
_____

## COMPLAINT

1.     Plaintiff John Doe, by and through his undersigned counsel, hereby alleges claims against Citigroup Global Markest, Inc. ("Citi") for discrimination in the workplace due to his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the New York State Human Rights Law and New York Executive Law § 290, *et seq*. ("NYSHRL"), the New York City Human Rights Law and New York City Administrative Code §8-107 ("NYCHRL") and breach of contract.

## THE PARTIES

2.     Plaintiff is a twenty-four (24) year old man.  He resides in Lexington, Virginia.

3.     Defendant Citigroup Global Markets ("Citi"), located at 390 Greenwich Street, New York, New York, provides banking and financial services.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction pursuant to 42 U.S.C. §§ 2000e, *et seq*., and 28 U.S.C.§ 1331.  This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff resides in Virginia and is a citizen of Hong Kong, Defendant is a citizen of New York, and the amount in controversy exceeds $75,000.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because the majority of unlawful acts complained of occurred in, and the records relevant to such practices are maintained in, this District where the Defendant resides.

## PROCEDURAL HISTORY

7.      On or around June 5, 2024, Plaintiff timely filed a charge with the Equal Employment Opportunity Commission ("EEOC"), a private forum.

8.      On or around September 27, 2024, Plaintiff received a Notice of Right to Sue from the EEOC, a copy of which is attached hereto as **Exhibit A (redacted to remove Plaintiff's name)**.

9.      On December 11, 2024, within 90 days of receiving the EEOC's Notice of Right to Sue, Plaintiff timely demanded arbitration in accordance with Citi's arbitration agreement by sending his written arbitration demand by email to Citi employees, Sara Wechter, the Director of Employee Relations, and in house counsel, Ravindra Shaw, who represented Citi with respect to Plaintiff's EEOC charge.   A copy of Citi's arbitration agreement is attached hereto as **Exhibit B (redacted to remove Plaintiff's name)**.

10.     Citi's arbitration agreement requires Citi to file Plaintiff's arbitration demand with the appropriate office of the AAA or FINRA "[w]ithin 30 calendar days of receiving a demand, or as soon as possible thereafter."  Citi is also required to pay all fees for the arbitration.  Citi has failed to timely file Plaintiff's arbitration demand with the appropriate office and has failed to pay the related fees.  Citi is in breach of the agreement.  Citi is not entitled to the benefits of its arbitration agreement because of its breach and has waived its right to arbitrate.

## STATEMENT OF FACTS

11.    Plaintiff is a recent 2024 graduate from Washington & Lee University.  He earned a Bachelor of Arts degree with a double major in Mathematics and Philosophy.  Plaintiff's undergraduate GPA is 3.8/4.0 and he obtained a perfect 170/170 GRE Quantitative Reasoning score.  Plaintiff was inducted into the Phi Sigma Tau Honor Society.

12.    Plaintiff has Autism.

13.    Autism has been defined as "a complex developmental disability that affects an individual in the areas of social interaction and communication."  *See* http://www.autism-society.org/ (follow "About Autism" hyperlink).  The National Institute of Mental Health explains that Autism "is defined by a certain set of behaviors," such as poor eye contact and loss of language or social skills "that can range from the very mild to the severe."[1]  Similarly, the American Psychiatric Association defines Autism as a neurodevelopmental condition characterized by, *inter alia*, impairment in reciprocal social communication and social interaction." *See A.L. v. Walt Disney Parks & Resorts US, Inc.,* 469 F. Supp. 3d 1280, 1302 (M.D. Fla. 2020).

14.    The ADA recognizes Autism as a disability.  *See* 42 U.S.C. §12102(1)(A) & (2)(A); *see also Doherty v. Bice*, No. 18 Civ. 10898 (NSR) (AEK), 2021 WL 4219696, at * 2 (S.D.N.Y. Sept. 15, 2021) ("[T]he 2008 ADA Amendments Act ('ADAAA') and the accompanying regulations make clear that autism is a type of impairment that will . . . qualify an individual for protection under the ADA."), *objections overruled*, 2021 WL 5630816 (S.D.N.Y. Dec. 1, 2021);

---

[1] See http://www.nimh.nih.gov/publicat/autism.cfm.

*Kailin v. Metcalf*, No. 19 C 4703, 2020 WL 1139259, at *3 (N.D. Ill. Mar. 9, 2020) (recognizing autism as a disability under the ADA and collecting cases).

15.     Plaintiff discloses his Autism diagnosis on a "need to know" basis only.  His diagnosis is not publicly known.

16.     In or around June 2023, following the completion of his junior year at Washington & Lee University, Plaintiff commenced employment as an analyst in Citi's summer program in New York City.   To be selected as a summer analyst with Citi in the first instance is a highly competitive and rigorous process.   As a summer analyst, Plaintiff worked on complex business problems which required Plaintiff to apply strong analytic and quantitative skills, as well as, *inter alia*, conduct research, review detailed financial statements, analyze financial performance and credit profiles, and automate relative value modeling between loans and secured bonds.

17.     Plaintiff did not disclose his disability to Citi prior to being selected for the analyst program.

18.     At the end of each summer, Citi extends numerous offers to its summer analysts to return as full-time employees following college graduation with starting salaries of approximately $110,000, plus a signing bonus, an end of year bonus, generous benefits, and sponsorship for overseas employees.

19.     The 2023 Citi summer program for analysts consisted of three rotations in the following departments:  (a) GSP Par Loans Trading; (b) Rates Repo Sales (before Plaintiff's disclosure of his disability and no accommodation) and Volatility Trading (after Plaintiff's disclosure of his disability and with an accommodation) ; and (c) Equity Derivatives Trading (which would have been Equity Sales before receiving an accommodation).

20.    Although Citi has robust written policies prohibiting discrimination based on disability, it has failed to abide by its own written rules.  In or around June 20, 2023, during the second week of the first rotation, Plaintiff met with Loraine Nascimento in Citi's Human Resources ("HR"), to discuss an accommodation for his disability.  Ms. Nascimento explained, in sum and substance, that self-identifying as having Autism may negatively impact Plaintiff's feedback, as well as his managing directors' impressions of him.  Ms. Nascimento explained to Plaintiff that many managers might not care too much about following Citi's HR policies, unless revenue was impacted.  She further explained that Plaintiff could not expect his managers to know what to do or how to accommodate him as a result of the Autistic "label."  Ms. Nascimento then gave Plaintiff the example that while Citi's written policy was to provide employees with the option to work from home two days per week, that no junior employee in the sales and trading divisions would be foolish enough to believe that any of their managers actually would allow this.  Ms. Nascimento said the same goes for self-identifying with a disability.  In other words, Citi's managers do not follow Citi's written policies for prohibiting discrimination based on disability, and thus, identifying as having a disability may place Plaintiff at a disadvantage.  Ms. Nascimento told Plaintiff that this was common in the financial industry.  She urged Plaintiff to consider this information before self-identifying as Autistic.

21.    During the first rotation, Citi ranked Plaintiff lower than his peers based on his underperformance in networking and social communications – the exact skill set impaired by his disability.  Indeed, during his first rotation in GSP Par Loans Trading, the negative feedback focused on Plaintiff's "soft skills," *i.e.*, more people focused social skills, and specifically, low scores in being proactive and networking.

22.     However, Plaintiff was informed by Human Resources that feedback from his first rotation also included the comment "Deserves a return offer."  Thus, despite his short comings in some of the soft skill areas, Plaintiff otherwise had performed well enough in the first rotation to be considered deserving of a full time offer of employment.

23.     Plaintiff continued to receive some criticism on his soft skills, a known deficit for individuals with Autism.  Indeed, on the first day of the second rotation (Thursday), Plaintiff and the other summer analysts were told to arrive around 9:00 a.m. The summer analyst supervisor, Tyler Grimaldi, then told Plaintiff and another summer analyst, William Absey, that the expectation on the second rotation was for the summer analysts to arrive between 6:45 a.m. and 6:50 a.m.   Plaintiff's notes reflecting this meeting confirm this arrival time.  Accordingly, Plaintiff consistently arrived at 6:45 a.m.  Three days later, Plaintiff was told by Justin Shea-Katz and Tyler Grimaldi that the Managing Director, Paul Cangro, commented that Plaintiff was not there when everyone else started to arrive around 6:30 a.m.   However, prior to this time, Plaintiff was not informed that the expectation was for him to arrive before the others began to arrive.  Thereafter, upon learning this information, Plaintiff consistently arrived at 6:30 a.m.

24.     At the end of day 3 (Monday) on the second rotation, Plaintiff emailed HR about the first rotation feedback where he had received negative feedback on his soft skills.

25.     As a result of the negative feedback he received on the first rotation, Plaintiff informed Jennifer Lynch, the Vice President, Early Career Markets Recruiting, Workforce Intelligence & Talent Acquisition at Citi, that he had Autism.  Plaintiff explained that the negative feedback received during his first rotation was due to his disability.  Indeed, hallmarks of Autism include challenges with initiating or participating in social communications.

26.    Plaintiff met with Human Resources to discuss an accommodation, which was a potential change to a different desk.  On day 5 of the second rotation, Human Resources contacted Jerry Chen about moving Plaintiff from sales to trading within the repo desk (Plaintiff was already sitting in the trading section but listed as assigned to sales).  Later that day, Mr. Chen met with Plaintiff.  Mr. Chen was upset that Plaintiff was trying to change the desk.  Mr. Chen said, in sum and substance, that this "did not look good on anyone."  Plaintiff explained that he had nothing against the desk but that the change was an accommodation for his Autism disability.  Because Plaintiff was changing desks, HR told Plaintiff that he would not need to do the final project on the sales desk.

27.    Nevertheless, Citi has represented that during Plaintiff's second rotation, ***prior to Plaintiff receiving the accommodation***, that "Vice President Jerry Chen noted that **Plaintiff was not proactive in networking**, lacked urgency on his final project (which Plaintiff was excused from doing), and showed up late to the desk multiple days in a row (because Plaintiff was told a specific time to arrive at work – which Plaintiff did, but that the expectation was for Plaintiff to arrive prior to this time)."  These criticisms are directly attributable to an Autism disability and Plaintiff's accommodation.

28.    During the second rotation, Plaintiff was on the repo desk for one week in total. His new supervisor, Vice President Drew Dickman, provided feedback, including "talk slower during presentation; good on the desk =>  progress; keep doing what [you are] am doing; apply the knowledge; network around the floor; come back and follow up."  Plaintiff expressed interest in working on this desk if he was offered a position with Citi.  Subsequently, Plaintiff initiated additional networking meetings with others on this desk, including the Dimitry Levin, the Managing Director, Sean Wan, a Director, Drew Dickman, the Vice President, and Won Kook

Kim, the Managing Director of the adjacent desk who trades a similar product, as well as his analyst, Brett Graves, and his associate, Julia Edsparr.

29.     For Plaintiff's third rotation, Citi has stated that Managing Directors Oliver Taylor and Vladimir Galiothe noted that Plaintiff "**did not spend enough time networking** with traders on the desk."  Again, this criticism relates directly to Autism which is marked by varying degrees of impaired social interactions.  Plaintiff, moreover, disputes this criticism:  he believes he spent more time than the other summer analysts spent networking with the traders once he was instructed to do so.[2]

30.     Despite some continued criticism of Plaintiff's social skills by Citi, Plaintiff's performance markedly improved during his second and third rotations.   He received overwhelmingly positive feedback during his second and third rotations.  During Plaintiff's second rotation, his supervisor, Drew Dickman, told him in the feedback meeting "Great job - keep doing what you are doing."  In addition, David Queruso, from Human Resources, told Plaintiff that in his feedback report, he was praised by the Rates Sales Director for his presentation on the group project.  Maggie Frankel, a Sales Associate, also told Plaintiff that he was doing a good job.  In the third rotation, the Managing Director (Trader), Henry Yeh, told Plaintiff during his feedback meeting that he had gained a strong grasp of their business and the product.  Matt Lanigan, the Assistant Vice President (Sales), who was the supervisor for the third rotation summer analyst

---

[2] Plaintiff spent time networking "on the desk" with (a) the following Equity Single Stock Option Trading employees under the Managing Director Henry Yeh: Claudio Gonzalez, Zach Han, Andrew Curran, Colin Barrow, Emma Boland, MD Henry Yeh, and Director Lee Markle and with (b) the following Equity Derivative Trading employees under Managing Director Vladimir Galiothe: Director Jason Huang, Judy Jia, Eric He, Ashley Wang, and Jenny Yang.  He also networked with Raphaël Alain Uribe in Equity Derivative Sales.  In fact, Plaintiff networked (coffee-chatted, chatted on the desk, or shadowed) almost 80 staff at Citi over the eight and a half weeks that he was on the trading floor.

group project, said that Plaintiff had a great presentation on the Lululemon pitch, for which he analyzed the financial performance of Lululemon and pitched long (6 months) based on China growth and policy analysis. Mr. Lanigan was especially pleased with Plaintiff's Chinese policy analysis. Overall, Plaintiff received very little, if any, negative feedback from these two rotations.

31.    As Plaintiff plainly demonstrated during his second and third rotations, his disability does not impede his ability to fulfill the essential duties of his job as an analyst, especially with a reasonable accommodation, and Plaintiff is able to work at a very high and competitive level.

32.    Because Citi was on notice of Plaintiff's disability which impairs social interactions, Citi should not have relied, to Plaintiff's detriment, on the negative feedback he received when working without the accommodation in his first rotation and some continued— albeit much less—criticisms about his social skill set thereafter. But this is precisely what happened.

33.    As Citi was on notice of Plaintiff's Autism, it should not have penalized him precisely for the hallmarks of his disability—*i.e.*, having certain social skill set deficits. There is no indication that Plaintiff could not perform the essential job functions, with or without a reasonable accommodation. Rather, he was disfavored by management—as HR warned he most likely would be—because of his disability and its hallmark traits and the fact that he chose to inform management about his disability.

34.    Citi's primary reason for not extending Plaintiff an offer of full-time employment with the Markets Full Time Analyst Class of 2024 was the low rankings he received on his first rotation where he worked without an accommodation. More troubling is that he received low rankings specifically in "soft skills," or social-based skills, which are concomitant with Autism,

and that after being on notice of his disability, Citi continued to criticize, albeit to a lesser degree, his social-based skills.

35.     Plaintiff's performance during the second and third rotations—where he was provided a reasonable accommodation of coordinating with the desks that aligned with his skill sets—greatly improved.  However, his second rotation was cut short by one week as a direct result of the disability accommodation because it took Citi an additional week to coordinate with the desks that align with his skill sets.  Thus, while Plaintiff received positive feedback during his second rotation, if Plaintiff had been given an equal amount of time in the second rotation as his neurotypical peers, his performance would have been even stronger.

36.     In addition, the third rotation is traditionally shorter than the first two rotations (two and a half weeks instead of three weeks).  Hiring decisions are made on the Monday of the final week of the summer analyst program.  Therefore, the third rotation often carries less weight than the first two rotations because the supervisor provides feedback on the summer analysts for only the first week and a half of the third rotation.

37.     In Plaintiff's end of summer meeting, Jennifer Lynch noted, in sum and substance, that his "ability to improve upon feedback is noticeable (or well recognized), especially in the second and third rotation."  Nevertheless, Citi did not offer Plaintiff a full-time position.

38.     Citi represents that it is "committed to the hiring and training of neurodiverse individuals and has numerous resources to ensure that all such individuals can thrive in our inclusive environment."  Yet Citi based its decision not to extend Plaintiff an offer in the Markets Full Time Analyst Class of 2024 due, in whole or large part, to his low ratings in skill sets tied directly to his disability, especially during the time period in which he worked without an accommodation.

39.    Citi's failure to offer Plaintiff a permanent position is based on his disability and in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, the New York State Human Rights Law and New York Executive Law § 290, *et seq.*, and the New York City Human Rights Law and New York City Administrative Code §8-107.

40.    As a result of Citi's unlawful actions, Plaintiff has suffered damages, including, but not limited to, a starting base salary of approximately $110,000, plus a signing bonus, an end of year bonus, generous benefits, and sponsorship for overseas employees.

41.    Plaintiff has fulfilled his duty to mitigate damages by applying for comparable employment positions.

## COUNT ONE
### (Disability Discrimination in Violation of 42 U.S.C. § 12101, *et seq.*)

42.    Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

43.    Defendant discriminated against Plaintiff in the terms and conditions of her employment based on disability in violation of 42 U.S.C. § 12101, *et seq.*

## COUNT TWO
### (Disability Discrimination in Violation of NYSHRL)

44.    Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

45.    Defendant discriminated against Plaintiff in the terms and conditions of his employment based on disability in violation of NYSHRL, the New York Executive Law §§ 290 and 296.

## COUNT THREE
### (Disability Discrimination in Violation of the NYCHRL)

46.     Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

47.     Defendant discriminated against Plaintiff in the terms and conditions of his employment based on disability in violation of the New York City Human Rights Law and New York City Administrative Code §8-107 ("NYCHRL").

## COUNT FOUR
### (Breach of Contract)

48.     Plaintiff repeats and realleges each and every allegation contained above as if set forth fully herein.

49.     Plaintiff and Defendant entered into an arbitration agreement attached hereto as Exhibit B.

50.     Plaintiff fully performed pursuant to the agreement.  Within 90 days of receiving his Notice of Right to Sue from the EEOC, on December 11, 2024, Plaintiff served Defendant via email with his written arbitration demand in accordance with the arbitration agreement.

51.     Pursuant to the arbitration agreement, Defendant was required to file Plaintiff's arbitration demand with the appropriate agency "within 30 days, or as soon as possible thereafter."  Defendant breached the arbitration agreement by failing to timely file Plaintiff's arbitration demand with the appropriate agency.

52.     The arbitration agreement also requires Defendant to pay all fees associated with the arbitration.  Defendant breached the arbitration agreement by failing to pay the necessary fees associated with the arbitration.

53.     Indeed, on January 10, 2025, and March 19, 2205, Plaintiff's counsel emailed Citi's counsel, Ravindra Shaw, and Sara Wechter, the Director of Employee Relations, to inquire on the status of the filing of Plaintiff's arbitration demand.  Both Mr. Shaw and Ms. Wechter failed to respond.   As of this time, more than eight months after receiving Plaintiff's demand for arbitration, Citi has failed to file Plaintiff's arbitration demand and pay the corresponding fees.

54.     Because Defendant has breached its arbitration agreement, it is not entitled to the benefits provided thereunder, and has waived its right to arbitrate.  As a result of Defendant's breach, Plaintiff should be permitted to proceed with his claims in court.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A. Awarding Plaintiff lost wages and compensatory damages, including damages for emotional distress;

B. Awarding Plaintiff punitive damages in an amount to be determined at trial;

C. Awarding Plaintiff all costs of this action and reasonable attorney's fees; and

D. Granting Plaintiff such other relief as the Court deems appropriate and equitable, including injunctive and declaratory relief as may be required in the interest of justice.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury of all issues as of right by jury.


Dated:  August 29. 2025                          GISKAN SOLOTAROFF
          New York, New York                      & ANDERSON, LLP

                                     */s/ Catherine E. Anderson*
                                     Catherine E. Anderson
                                     canderson@gslawny.com
                                     1 Rockefeller Plaza, 8th Floor
                                     New York, New York 10020
                                     Tel: (212) 847-8315 x 12

EXHIBIT A

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Boston Area Office**
15 New Dudbury St, Room 475
Boston, MA 02203
(617) 865-3670
Website:  www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 09/27/2024

**To:** Mr. ▮▮▮▮▮▮▮▮
301 E. Washington Street
Lexington, VA 24450
Charge No: 520-2024-05719

EEOC Representative and email:    NICHOLAS FULLER
Federal Investigator
nicholas.fuller@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 520-2024-05719.

On behalf of the Commission,

Digitally Signed By:Feng K. An
09/27/2024
Feng K. An
Area Office Director

**Cc:**
Sara Sanfilippo
388 Greenwich St
New York, NY 10013

Catherine Anderson Esq.
Giskan Solotaroff & Anderson LLP
90 Broad Street 2d Floor
New York, NY 10004


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

#### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

#### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

#### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 520-2024-05719 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Yaw Gyebi, Jr., 33 Whitehall St 5th Floor, New York, NY 10004.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 520-2024-05719 to the District Director at Yaw Gyebi, Jr., 33 Whitehall St 5th Floor, New York, NY 10004.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

 An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or "**in remission**" (e.g., cancer) is a disability if it **would be substantially limiting when active**.

 An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

 "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

 The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

 A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note:* *Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT B

DocuSign Envelope ID: 57EA5115-292F-44C3-846C-9CF7CB28D12A



2022-04-29



301 E Washington St
Lexington, Virginia 24450

Dear ▮▮▮▮▮

We are pleased to extend you an offer to join Citigroup Global Markets Inc. as a participant in the Institutional Clients Group, Summer Analyst Program, in the Sales and Trading (the "Program"). We were impressed with your accomplishments, and are confident that Citi can offer you a rewarding and challenging career opportunity.

This letter and any attachments ("Letter") set forth the terms of our offer. If you accept, you will be joining a family of companies that serves nearly 200 million customer accounts, does business in more than 160 countries and jurisdictions, and is bound together by a workforce committed to four key principles: common purpose, responsible finance, ingenuity and leadership.

## Compensation:

Your annual base salary will be $110000 USD, payable in accordance with Citi's regular payroll practices as in effect from time to time (which currently provide for payments on every other Friday). Based on this salary, you will be paid $2115.38USD per week, which is intended to compensate you for all hours worked in a workweek, regardless of their number. As a Summer Analyst or Summer Associate, you will not be eligible for benefits.

You will be eligible for overtime compensation. All overtime must be pre-approved by the Program Management Team. Because your salary is intended to compensate you for all hours that you work, overtime will be paid according to the fluctuating workweek method. Notwithstanding any Citi policy to the contrary, this means that when you work more than 40 hours in a workweek, your overtime pay will be calculated by dividing your weekly salary by the total number of hours you worked during the week and then multiplying that rate of pay for the workweek by the one-half time overtime premium. For example, if your salary is calculated based on the rate of $50,000 per annum, you will be guaranteed a salary of $961.54 per week ($50,000 per annum/52 weeks). If you worked 50 hours in a given workweek, your regular hourly rate of pay for that workweek would be $19.23 per hour ($961.54 per week/50 hours of work). Your overtime compensation for that workweek would be $96.15 ($19.23 per hour * .5 overtime premium *10 hours of overtime). Under this calculation method, the amount of overtime paid to you will vary weekly depending on how many hours you work.

## Title/Function:

You will serve as a(n) Summer Analyst, in the Program's Class of 2023, reporting initially to the Program Manager and, thereafter, to the applicable business manager.

## Program Dates:

Your anticipated start date will be Summer 2023. The Program is currently scheduled to continue for 10 weeks.

## Location and Work Hours:

Your primary work location will be 388 GREENWICH STREET and your regularly scheduled work hours shall be determined based on your assignment and may vary by business.

## Training and Licensing Requirements:

Your continued employment is contingent upon, among other things, your successful and timely completion of, and overall satisfactory performance during, the Training Program, including passing all applicable exams administered during this time.

If at any time during your employment Citi establishes training and/or licensing requirements for the position you hold at the time, your continued employment also will be contingent upon successfully completing these requirements in the timeframe specified by the business. If you fail to obtain the licenses required by your business in the time frame set forth by your business, you may be subject to discipline up to and including termination of employment. Certain restrictions may apply to your employment activities until you successfully complete these requirements. If you have any questions regarding the requirements for your position or business, contact your Recruiter or Human Resources.

## Health and Insurance Benefits:

Participation in any Citi sponsored benefit plan is subject to the terms of such plan as in effect from time to time. To be eligible for most of Citi's employee benefit plans, you need to be actively employed for at least 90 days. This means that during the Program you will not become eligible to participate in Citi's employee benefits plans. Although you may receive a benefits enrollment package because it is automatically delivered after 45 days of employment receiving, it does not change the 90-day eligibility requirement. An exception to the 90-day employment requirement is the Citigroup 401(k) Plan. You are eligible to participate in the Citi 401(k) Plan beginning with your first day of employment. The Company has the discretion to change its benefit plans at any time without prior notice.

## Pre-Employment Requirements:

This offer of employment is subject to satisfactory completion of all reference and background checks, which will include a consumer and/or investigative consumer report, a criminal background check, academic verification and a pre-employment drug screen. The Central Registration Depository will verify any applicable license and/or registration, and confirm whether any violation, fine, suspension, or any other regulatory action has been taken against you. Furthermore, you must provide appropriate work authorization and, in compliance with the Immigration Reform and Control Act of 1986, complete an Employment Verification Form I-9 and present proof of identity and employment eligibility no later than 3 days after your Program start date.

Further information and instructions on completing these pre-employment requirements, including your new hire paperwork, can be found on the Onboard Citi website. Onboard Citi contains useful information which will help you navigate Citi's onboarding process and prepare you for your new career at Citi. Instructions for accessing Onboard Citi will be sent to you separately. Your new hire paperwork and pre-employment screening should be completed prior to your start date; Onboard Citi will track your progress, so please check it often to ensure you have submitted all required information. Please note that these reference and background checks may not be completed by your Program start date. If the outcome of these checks and the pre-employment screening are not satisfactory, this offer may be withdrawn and/or your employment may be terminated immediately.

In addition, you must provide a member of the Citi Graduate Recruitment team with your written consent to obtain a copy of your spring 2023 transcript from your college/university as soon as it is available and such transcript must verify that, as of your Program start date, (i) you are a current student in good standing at your college/university; (ii) your GPA meets the preferred requirement for the Program (except if your school has a grade non-disclosure policy); and (iii) your expected graduation date.

**Fingerprinting and Drug Testing Options:**

A member of the Citi Graduate Recruitment team will contact you to make arrangements for your drug test and fingerprinting.

**New Hire Paperwork Options:**

A member of the Citi Graduate Recruitment team will contact you to arrange for completion of your new hire paperwork.

**Relocation Payment:**

You will receive an after-tax lump sum cash payment in the amount of $2000 USD (the "Net Relocation Payment"), with a pre-tax value to be determined by Citi (the "Gross Relocation Payment") to assist with your relocation into the region where you will commence employment with Citi. The Net Relocation Payment will be made to you as soon as administratively practicable after your Start Date, provided you remain employed on the date of payment. If you resign (or give notice of your resignation) or your employment terminates for any reason other than death or disability within one year of your Start Date, you agree to repay the relocation payment, which repayment amount shall be determined by Citi and communicated to you. Such repayment amount will not exceed the Gross Relocation Payment and is due and payable within 30 days of your resignation or termination date. You expressly authorize Citi to deduct any amounts owed from any account that you maintain with Citi, or from any commission or other compensation payments (other than salary) owed to you by Citi (where permissible by law). Separately and in addition, you further agree to pay Citi for all expenses it incurs, including attorney's fees, in connection with the collection of any payment due under this paragraph.

If you accept our offer, Citi will reimburse you/pay for your reasonable round trip travel expenses for the sole purpose of training. Citi will only cover these expenses to and from your training location if it is not the same as your primary work location.

• By Plane/Amtrak: Provided that you advise us that you require a flight at least thirty (30) days prior to the date on which you will be traveling and you identify the location(s) that you will be traveling from and to as well as the dates on which you will be traveling, we will pay for your round trip flight to and from your internship location. We will send you a separate email with instructions on how to book your travel. Please note that your airline/Amtrak tickets must be booked through Citi; any airline or Amtrak ticket booked on your own – whether personally or through a third party other than Citi – will not be reimbursed by Citi.

• By Car: If you plan to drive to your work location, we will reimburse you for your trip at a rate of .56 cents per mile. You will be able to submit your receipt for reimbursement through Citi Travel & Expense (CTE) within thirty (30) days of the start of your summer internship for purposes of your trip to your summer internship location and on or before the last day of your summer internship for purposes of your trip from your summer internship location; specifically, please submit a MapQuest route to confirm your exact mileage. Payment will then be made to you in accordance with Citi's T&E policy. In addition, please note that parking fees will not be reimbursed nor will tolls or fuel, insofar as those are subsumed in the rate of .56 cents per mile.

**Restrictive Covenants:**

**A. Pre-Existing Covenants**. You agree to abide by any duties and obligations owed to any prior employer, including any restrictions regarding solicitation of employees or clients, agreements not to compete, confidentiality provisions, and employment termination notice requirements. If you are subject to any of these duties and obligations, you will disclose them and provide copies of relevant documentation to Citi prior to accepting this offer. By accepting this offer, you represent that your employment with Citi will not violate any such duties and obligations, and your employment with Citi is contingent upon same.

**B. Non-Solicitation of Employees and Clients.** While you are employed by Citi, and for the one-year period following your last date of employment with Citi, you agree that you will not (a) engage in any conduct, either individually or in concert with a third party, which directly or indirectly causes or attempts to cause any Citi employee to leave the employment of Citi, or (b) directly or indirectly, induce or attempt to induce or otherwise counsel, advise, encourage or solicit any client of Citi with whom you had substantial contact during your employment to terminate their relationship with Citi or to transfer assets away from or otherwise reduce its business with Citi.

**C. Confidential Information**. Except as otherwise provided by applicable laws or regulations and/or in the "Exempted Disclosures" section below, during your employment and after your employment with Citi terminates for any reason, you are required to keep confidential any personal, proprietary, confidential and/or secret information of or regarding Citi that you may have access to or acquire during the course of your employment with Citi ("Confidential Information"). You will be required to confirm your understanding of these obligations by signing Citi's Intellectual Property and Confidential Information Agreement included in your new hire paperwork.

**D. Breach**. Citi takes these obligations seriously. You acknowledge that should you breach the non- solicitation and confidentiality obligations set forth in subparagraphs (B) and (C), above, in any way, Citi will suffer immediate and irreparable harm and that money damages will be inadequate relief. Therefore, you acknowledge and agree that, in addition to any other remedies, Citi will be entitled to injunctive relief to enforce these provisions, and you hereby consent to the issuance by a court of competent jurisdiction of a temporary restraining order, preliminary or permanent injunction to enforce Citi's rights herein.

**Exempted Disclosures:**

Nothing contained in this Letter or any Citi policy is intended to prohibit or restrict you or Citi from voluntarily disclosing this Letter or providing evidence or other information to any government, regulatory or self-regulatory agency such as (without limitation) the Securities and Exchange Commission ("SEC"), the Commodities Futures Trading Commission ("CFTC"), the Department of Justice ("DOJ"), the Financial Industry Regulatory Authority Inc. ("FINRA"), the National Labor Relations Board ("NLRB"), the New York Stock Exchange ("NYSE"), or the Equal Employment Opportunity Commission ("EEOC"), or from responding to any court order or subpoena, or from participating in any reward program offered by any government, regulatory, or self-regulatory agency. You may also disclose confidential information, including trade secrets, to (a) any government, regulatory or self-regulatory agency, including under Section 21F of the Securities and Exchange Act of 1934, Section 23 of the Commodity Exchange Act of 1936, or Section 7 of the Defend Trade Secrets Act of 2016 ("Defend Trade Secrets Act"), and the rules thereunder and/or (b) an attorney in connection with the reporting or investigation of a suspected violation of law or your attorney in a court filing under seal in connection with a retaliation or other lawsuit or proceeding as permitted under the Defend Trade Secrets Act.

You do not need the prior authorization of Citi to make these disclosures or provide evidence or other information to any government, regulatory, or self-regulatory agency, and you are not required to notify Citi that you have done so.

The disclosures permitted under this Paragraph are intended for regulatory and/or law enforcement purposes.  It does not permit disclosure for commercial or competitive purposes of any confidential information, including trade secrets, to government owned, related or sponsored agencies, entities or enterprises that compete directly with Citi and its businesses.

DocuSign Envelope ID: 57EA5115-292F-44C3-948C-9CF7CB28D12A

**Conflicts of Interest and Compliance Requirements:**

Your business or function may restrict your ability to hold certain licenses or conduct certain activities outside of your employment with Citi; please consult your manager to determine if any restrictions apply to you.

Further, you are required to obtain Citi's compliance approval for any outside business activity in which you are currently involved; to initiate the approval process, please call the Outside Activities hotline at 866-547-9144 or notify your HR representative.

In accordance with applicable policy, you are required to maintain your covered investment accounts with one or more of the following preferred brokers: (i) Citi Personal Wealth Management or Citi Private Bank; (ii) Charles Schwab; (iii) Fidelity; and/or (iv) TD Ameritrade.

In addition:
•If you have received material and nonpublic information about an issuer of publicly traded securities prior to your employment with Citi, for so long as the information remains material and/or nonpublic and is not otherwise disclosed to Citi through its own business with a potential client or issuer or other permissible means, you may not use such information: (i) in the course of your employment; (ii) to trade any securities for your own account or any related accounts, and (iii) you may not use such information to direct or influence trading.

**Arbitration:**

Any controversy or dispute relating to your employment with or separation from Citi other than controversies or disputes that by law are not arbitrable, will be resolved in accordance with Citi's Employment Arbitration Policy, the terms of which are incorporated in this Letter. A copy of the Principles of Employment is attached for your signature, along with the Employment Arbitration Policy.

**At-Will:**

This offer should not be construed as a promise or guarantee of employment for any defined period of time. Your employment relationship with Citi is "at-will" which affords you and Citi the right to terminate the relationship at any time for no reason or any reason not otherwise prohibited by law.

**Taxes:**

All compensation, payments, incentive and retention awards, stock, options, perquisites, and benefits set forth in this Letter are subject to applicable federal, state and local taxes, and Citi will withhold such taxes as it determines are required by applicable law or regulation. You will remain obligated to pay all required taxes on all compensation, payments, incentive and retention awards, perquisites, and benefits regardless of whether these amounts have been withheld or are required to be withheld by Citi.

**Media Inquiries and Statements:**

You further agree that at no time shall you discuss any matters affecting or concerning Citi with any member of the media unless a duly authorized representative of the business in which you will work and Citi's Global Public Affairs group both grant prior written consent. This requirement is not intended to supersede your rights and obligations under applicable law and Citi policy, including but not limited to Citi's policies regarding media inquiries.

**Merger of Terms**:

This Letter describes Citi's offer of employment. Any other documents, discussions, or agreements that you may have had with us are not part of our offer unless they are described in this Letter. If there is any conflict between this Letter and the terms of the documents described in this Letter, including any equity or incentive compensation or employee purchase plan or program, then the terms of the applicable document, plan or program shall govern.

**Modification:**

Except as otherwise provided herein, this Letter may not be modified except by a separate writing signed by both you and the Senior Human Resources Officer for your business.

**409A of the Internal Revenue Code:**

We agree that, unless any plan, program or arrangement referred to in this Letter provides for payments or awards that are subject to Section 409A of the Internal Revenue Code of 1986, as amended, and the rules and regulations promulgated thereunder (the "Code"), any payment or award made pursuant to this Letter is intended to be a short-term deferral that is exempt from Section 409A of the Code, and that this Letter shall be administered in accordance with the short-term deferral exception to Section 409A of the Code. You agree that if any payment or award to be made pursuant to this Letter or any plan, program or arrangement referred to in this Letter is determined to be subject to Section 409A of the Code, then such payment or award shall be administered in accordance with Section 409A of the Code.

**Severability:**

In the event that any provision of this offer shall be determined to be invalid or unenforceable, in whole or in part, the remaining provisions of this offer shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by law.

**Expiration:**

To accept this offer of employment, please review, sign and return one executed original of the Letter to Alexis Montagano, AVP, Citi, 388 Greenwich street, by 12-May-2022, otherwise this offer of employment will lapse.

We look forward to having you on board.

Sincerely yours,


Alexis Montagano
AVP
Citi Graduate Recruitment
On Behalf of Citigroup Global Markets Inc.

Enclosure:    Principles of Employment (signature required)
              Employment Arbitration Policy

Accepted and Agreed:

Date: _____

[1] References herein to "Citi" shall mean Citigroup Inc., its subsidiaries, and its and their affiliates.



## PRINCIPLES OF EMPLOYMENT

As you consider our offer of employment or continued employment with Citigroup Inc., its subsidiaries, and its and their affiliates (collectively "Citi"), there are certain matters that we want to clarify.

First, you must observe the policies that we publish from time to time for employees. These include a requirement that you maintain the highest standards of conduct and act within the highest ethical principles. You must not do anything that may be a conflict of interest with your responsibilities as an employee except as otherwise provided by applicable laws or regulations. These expectations are included in the Employee Handbook, the Citi *Code of Conduct*, and any other policies that apply to your business or function, or to Citi employees generally.

These documents are available for your review prior to your acceptance of employment, if you choose to review them. If you're a new hire, you'll be asked to acknowledge receiving a copy of the Citi Code of Conduct and the U.S. Employee Handbook on or before your start date. Remember: It's your responsibility to read and understand these policies and expectations. If you have any questions, now or in the future, please ask Human Resources.

Second, except as provided in the seventh principle below, you must never use, nor disclose to any unauthorized person within Citi or anyone not affiliated with Citi, any personal, proprietary or confidential information you obtain as a result of your employment with us ("Confidential Information") except when necessary in your employment with us or as otherwise provided by applicable laws or regulations. This applies both while you're employed with us and after that employment ends. If you leave our employ, you may not disclose, use, retain, or take with you any Confidential Information or any writing or other record that relates to Confidential Information.

Third, your employment with us requires your full attention. You waive any rights to and further agree to assign, and hereby do assign, any work of authorship, invention, discovery, development or improvement made or conceived by you, either alone or jointly with others, during the time you're employed by us that pertains to our business; arises out of your employment; is aided by the use of time, materials, property or facilities of Citi; or is at Citi's request and expense ("Intellectual Property"). Works of authorship created within the scope of your employment are owned by Citi as "works for hire."

In addition, in the event that you currently own rights in any inventions or technologies (such as financial models, trading strategies, or software programs) that pertain to Citi's business ("Other Technologies"), you're required to notify your manager of the existence and nature of such things prior to your employment with us. Unless you obtain a signed written agreement from an authorized representative of Citi providing otherwise prior to your employment with us, you agree to assign, and hereby do assign, to us any interest that you have in Other Technologies.

Additionally, you agree to assist Citi in connection with any effort to perfect the assignment of Intellectual Property including Other Technologies; any controversy or legal proceeding relating to Intellectual Property; and in obtaining domestic and foreign patent(s), copyright or other protection covering Intellectual Property. You also must irrevocably waive author's moral rights relating to Intellectual Property and not exercise such right in any manner.

Fourth, you and Citi agree to follow Citi's dispute resolution/arbitration procedures. This applies while you're employed by us as well as after your employment ends. While we hope that disputes with our employees will never arise, we want them resolved promptly if they do arise. These procedures don't preclude us from taking disciplinary actions (including terminations of employment) at any time, but if you dispute those actions, we both agree that the disagreement will be resolved through these procedures.

Our procedures are divided into two parts:

1. With respect to (a) disciplinary action taken in the form of a Final Warning/Final Performance Improvement Plan; or, (b) termination of employment, which you think is unfair, there is an internal dispute resolution procedure that allows you to seek review of those actions.

2. With respect to all disputes arising out of or relating to your employment with and separation from Citi which are based upon a legally protected right (i.e., statutory, contractual or common law)*, including ones not resolved by the dispute resolution procedure, we both agree to submit the dispute to binding arbitration (except those disputes which by federal law are not subject to binding arbitration). A detailed description of Citi's Employment Arbitration Policy is included as Appendix A of the Employee Handbook.

Again, it's your responsibility to read and understand the dispute resolution/arbitration procedure. If you have any questions, now or in the future, please ask Human Resources.

Moreover, nothing contained herein is intended to, or shall be construed to, prohibit you from filing a charge or other proceeding with, or participating in an investigation or other proceeding conducted by, any government agency as discussed in more detail in the attached Arbitration Policy.

Fifth, during your employment and for the one-year period following the resignation or termination of your employment for any reason, to the extent permitted by law, you agree that you won't (a) engage in any conduct, either individually or in concert with a third party, which, directly or indirectly, causes or attempts to cause any Citi employee to leave his or her employment with Citi for the purpose of employment outside of Citi, or (b) directly or indirectly, induce or attempt to induce or otherwise counsel, advise, encourage or solicit, including through the use of social media, any client of Citi whom you serviced or with whom you had substantial contact during your employment to terminate its relationship with Citi or to transfer assets away from or otherwise reduce its business with Citi.

Sixth, nothing herein constitutes a contract of employment for a definite period of time. The employment relationship is "at-will," which affords either party the right to terminate the relationship at any time for no reason or any reason not otherwise prohibited by applicable law.

Seventh, nothing contained herein is intended to prohibit or restrict you or Citi from providing evidence or other information to any government, regulatory or self-regulatory agency, such as (without limitation) the Securities and Exchange Commission ("SEC"), the Commodity Futures Trading Commission ("CFTC"), the National Labor Relations Board ("NLRB"), the Equal Employment Opportunity Commission ("EEOC"), the Department of Justice ("DOJ"), the Financial Industry Regulatory Authority, Inc. ("FINRA"), or the New York Stock Exchange ("NYSE"), or from responding to any court order or subpoena, or from participating in any reward program offered by any government, regulatory, or self-regulatory agency. You may also disclose confidential information, including trade secrets, to (a) any government, regulatory

or self-regulatory agency, including under Section 21F of the Securities and Exchange Act of 1934, Section 23 of the Commodity Exchange Act of 1936, or Section 7 of the Defend Trade Secrets Act of 2016 ("Defend Trade Secrets Act"), and the rules thereunder or (b) an attorney in connection with the reporting or investigation of a suspected violation of law or to an attorney or in a court filing under seal in connection with a retaliation or other lawsuit or proceeding, as permitted under the Defend Trade Secrets Act. You do not need the prior authorization of Citi to provide evidence or other information to any government, regulatory, or self-regulatory agency, and you are not required to notify Citi that you have done so.

Understood and agreed.
Accepted and agreed

DocuSigned by:

███████████████

BA870162F0FA4FF...

Signature

[dateSign]

Date

* These include, but aren't limited to, all claims, demands, or actions alleging unlawful employment discrimination or other conduct under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act of 1989, and all amendments thereto, and any other federal, state, or local statute or regulation or common law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, breach of contract, defamation, retaliation or whistleblower claims, and any claims arising under the Citigroup Separation Pay Plan.

Citi retains the right to decrease an employee's compensation and/or benefits, transfer or demote an employee, or otherwise change the terms and conditions of any employee's employment with Citi at any time with or without notice at its sole discretion. We believe these matters are important to you as an employee and to us as an employer.

## *THE EMPLOYMENT ARBITRATION POLICY*

### Statement of Intent
Citi values each of its employees and fosters good relations with, and among, all of its employees. Citi recognizes, however, that disagreements occasionally occur between an individual employee and Citi or between employees in a context that involves Citi.1

Citi believes that the resolution of such disagreements is best accomplished by internal dispute resolution (with respect to eligible matters as described in the Handbook) and by external arbitration (with respect to all matters within the scope of this Policy). For these reasons, Citi has adopted this Employment Arbitration Policy ("Policy"), which is applicable to all employment-related disputes, whether initiated by you or by Citi, as further described below. Arbitration shall be conducted either under the auspices of the Financial Industry Regulatory Authority, Inc. ("FINRA") or the American Arbitration Association ("AAA") as follows:

- Before the arbitration facilities of FINRA if you are, or were, a person associated with Citigroup Global Markets Inc. ("CGMI"), i.e., a member of FINRA ("Associated Person"), and your dispute, or any portion of it, arises out of or relates to your association with CGMI. You're an Associated Person if you're FINRA registered, or applied for registration; you're an officer, director or branch manager of CGMI; or you're engaged in CGMI's investment banking or securities business. Keep in mind that you may be a Citi Dual Employee, meaning you're employed by both CGMI and another Citi affiliate (e.g., Citibank, N.A.). If you're a Citi Dual Employee and any aspect of your dispute arises out of or relates to your association with CGMI, your entire dispute must be submitted to FINRA, including any dispute with your other, non-CGMI, Citi employer.

- Before the arbitration facilities of the AAA where you don't meet the criteria above for FINRA arbitration. This includes when you're a Citi Dual Employee and no aspect of your dispute arises out of or relates to your association with CGMI. Also, you must submit to AAA where you otherwise meet the criteria for FINRA arbitration under this Policy but FINRA declines the use of its facilities or the dispute is ineligible for arbitration before FINRA.

Employment with Citi is a voluntary relationship for no definite period of time, and nothing in this Policy or any other Citi document constitutes an express or implied contract of employment for a definite period of time.

This Policy doesn't constitute, nor should it be construed to constitute, a waiver by Citi of its rights under the "employment-at-will" doctrine nor does it afford an employee or former employee any rights or remedies not otherwise available under applicable law.

Your eligibility and consideration for merit increases, incentive and retention awards, equity awards, or the payment of any other compensation to you, as well as your acceptance of employment with Citi, or your continued employment with Citi, shall constitute consideration for and assent to your obligations under this Policy.

1. Citi refers to Citigroup Inc., its subsidiaries and affiliates.

### Scope of Policy
This Policy applies to both you and to Citi, and makes arbitration the required and exclusive forum for the resolution of all employment-related disputes (other than disputes which by federal law are precluded from arbitration) between you and Citi (including Citi's predecessors, successors and assigns, its current and former parents, subsidiaries and affiliates and its and their current and former officers, directors, employees and agents) which are based on legally protected rights (i.e., statutory, regulatory, contractual or common-law rights), including disputes based on legally protected rights that are submitted to but aren't resolved by the Dispute Resolution Procedure. Therefore, you are waiving your right to bring your disputes in court or to have your disputes heard by a jury. This Policy applies to both existing and future disputes, including any disputes based on conduct that occurred before this Policy. Subject to the remainder of this Section, these disputes include, without limitation, claims, demands or actions under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, and all amendments thereto, and any other federal, state or local statute, regulation or common-law doctrine regarding employment, employment discrimination, the terms and conditions of employment, termination of employment, compensation, breach of contract, defamation, or retaliation, or any claims arising under or related to the Citi Separation Pay Plan.

Claims for Workers' Compensation or unemployment compensation benefits aren't covered by this Policy. Notwithstanding the foregoing, this Policy does not require arbitration of claims arising under Title VII or any tort related to or arising out of sexual assault or harassment ("the Referenced Claims") for employees (1) hired after the date the final regulations to the Fair Pay and Safe Workplaces Executive Order, Executive Order 13673 ("EO"), become effective, and (2) where the Citi entity employing such employee contracts with the federal government and such contract precludes pre-dispute agreements to arbitrate the Referenced Claims; except that if the EO is no longer effective for any reason (whether rescinded or superseded by further Executive action, or invalidated by a court, or no longer effective for any other reason), the Referenced Claims shall be subject to arbitration under this Policy.

This Policy doesn't exclude the jurisdiction of the National Labor Relations Board ("NLRB"), the Equal Employment Opportunity Commission ("EEOC") and/or state and local human rights agencies to investigate alleged violations of the laws enforced by the EEOC and/or these agencies. You aren't waiving any right to file a charge of

discrimination or other proceeding with, or participating in an investigation or other proceeding conducted by, any government, regulatory or self-regulatory agency, including (without limitation) the EEOC and/ or state or local human rights agency. You do not need the prior authorization of Citi to provide evidence or other information to any government, regulatory or self-regulatory agency, and you are not required to notify Citi that you have done so. However, except as otherwise provided by applicable laws or regulations, you shall not be entitled to seek or receive any monetary compensation from Citi as a result of any proceeding arising from the filing of a charge, and/or participating in an investigation resulting from the filing of a charge, with the EEOC and/or state or local human rights agency.

Nothing contained in this Policy is intended to prohibit or restrict you or Citi from providing evidence or other information to any government, regulatory, or self-regulatory agency such as (without limitation) the Securities and Exchange Commission ("SEC"), the Commodity Futures Trading Commission ("CFTC"), the Department of Justice ("DOJ"), the Financial Industry Regulatory Authority, Inc. ("FINRA"), or the New York Stock Exchange ("NYSE"), or from responding to any court order or subpoena, or from participating in a reward program offered by any government, regulatory, or self-regulatory agency. You may also disclose confidential information, including trade secrets, to (a) any government, regulatory, or self-regulatory agency, including under Section 21F of the Securities and Exchange Act of 1934, Section 23 of the Commodity Exchange Act of 1936, or Section 7 of the Defend Trade Secrets Act of 2016 ("Defend Trade Secrets Act"), and the rules thereunder or (b) an attorney in connection with the reporting or investigation of a suspected violation of law or to an attorney or in a court filing under seal in connection with a retaliation or other lawsuit or proceeding, as permitted under the Defend Trade Secrets Act. You do not need the prior authorization of Citi to make these disclosures or provide evidence or other information to any government, regulatory, or self-regulatory agency, and you are not required to notify Citi that you have done so.

Claims covered under this Policy must be brought and adjudicated on an individual basis. Neither you nor Citi may submit or maintain a class, collective or representative action for resolution under this Policy or in any forum.

To the maximum extent permitted by law, and except where expressly prohibited by law, arbitration on an individual basis pursuant to this Policy is the exclusive remedy for any employment-related claims which might otherwise be brought on a class, collective or representative action basis. Accordingly, you may not participate as a class or collective action representative or as a member of any class, collective or representative action, and will not be entitled to any recovery from a class, collective or representative action in any forum. Any disputes concerning the validity of this class, collective and representative action waiver will be decided by a court of competent jurisdiction, not by the arbitrator.
To the extent any dispute between you and Citi is not subject to arbitration for any reason, the class, collective and representative action waiver set forth in this Policy still applies.
In the event this class, collective or representative action waiver is found to be unenforceable with respect to any claim, then any such claim brought on a class, collective or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for all such claims.

Nothing in this Policy shall prevent you or Citi from seeking from any court of competent jurisdiction injunctive relief in aid of arbitration or to maintain the status quo prior to arbitration.
This Policy doesn't require that Citi institute arbitration, nor is Citi required to follow the steps of the Dispute Resolution Procedure, before taking disciplinary action of any kind, including termination of employment. However, if you disagree with any such disciplinary action, believe that such action violated your legally protected rights, and wish to pursue the dispute, you must institute proceedings in accordance with the Policy. The results of the arbitration process are final and binding on you and Citi.

Nothing in this Policy is intended to preclude your right to challenge the validity of this Policy on such grounds as may exist in law or equity.

Retaliation against employees who file a claim under this Policy, including claims regarding the validity of this Policy or any provision thereof, is expressly prohibited.

**Arbitration rules and procedures**
Arbitration under this Policy shall be conducted pursuant to the Employment Arbitration Rules and Mediation Procedures of the AAA or the rules for FINRA arbitration, in either case, "rules." Citi has modified and expanded these rules and procedures in certain respects. In particular, provisions covering fees and costs have been modified so that many of the costs typically shared by the parties will be borne by Citi.

To the extent any of the rules or procedures set forth in this Policy are in conflict with the rules or procedures of FINRA or the AAA at the time of the filing of an arbitration claim, the rules and procedures of FINRA or the AAA shall govern.

1. **Initiation of arbitration proceeding**
All disputes, whether initiated by you or by Citi, must be timely filed in accordance with the applicable statute of limitations for the claim(s) alleged. To initiate arbitration you must send a written demand for arbitration to the Director of Employee Relations for Citi; the demand will be considered timely if filed or received by Citi within the time period provided by the statute of limitations applicable to the claim(s) set forth in the demand. All demands, whether filed by you or by Citi, shall set forth a statement of the nature of the dispute, including the alleged act or omission at issue; the names of all persons involved in the dispute; the amount in controversy, if any; and the remedy sought. If you are an Associated Person or a Citi Dual Employee, you also will be required to specify whether your dispute, or any remedy sought in the dispute, is related in any way to your association with CGMI. Within 30 calendar days of receiving a demand, or as soon as possible thereafter, Citi shall file the demand with the appropriate office of the AAA or FINRA. You and Citi will also complete any other required forms for submission of the claim for arbitration, such as the Uniform Submission Agreement, when filing a claim with FINRA. For disputes subject to FINRA arbitration, you may initiate a claim with Human Resources as outlined herein or pursuant to FINRA's Code of Arbitration procedure, which can be found at **www.finra.org/ArbitrationMediation/Rules/CodeofArbitrationProcedure/index.htm**. The AAA's Employment Arbitration Rules and Mediation Procedures can be found at **www.adr.org/employment**.

2. **Appointment of neutral arbitrator(s)**
Neutral arbitrator(s) shall be appointed in the manner provided by AAA or FINRA rules, as applicable. However, it's Citi's intent that arbitrators be diverse, experienced and knowledgeable about employment-related claims.

3. **Qualifications of neutral arbitrator(s)**
No person shall serve as a neutral arbitrator in any matter in which that person has any financial, personal or other interest in the result of the proceeding, or in which that person has a relation to the underlying dispute, including any relation to the parties. Prior to accepting appointment, the prospective arbitrator(s) shall disclose any circumstance likely to prevent a prompt hearing or to raise an issue as to the arbitrator's bias, impartiality or independence. Upon receipt of such information, the AAA or FINRA, as applicable, either will replace that person or communicate the information to the parties for comment. Thereafter, the AAA or FINRA, as applicable, may disqualify that person, and its decision shall be conclusive. Vacancies shall be filled in accordance with the AAA or FINRA rules, as applicable.

4. **Vacancies**
The AAA or FINRA, as applicable, is authorized to substitute another arbitrator if a vacancy occurs or if an appointed arbitrator is unable to serve promptly.

5. **Proceedings**
The hearing shall be conducted by the arbitrator(s) in whatever manner will most expeditiously permit full presentation of evidence and arguments of the parties. The arbitrator(s) shall set the date, time and place of the hearing, notice of which must be given to the parties by the AAA or FINRA, as applicable, at least 30 calendar days in advance unless the parties agree otherwise. Arbitration hearings shall be held in the closest available venue to your current Citi work location (or for former employees, their last Citi work location). Throughout this Policy there will be references to AAA or FINRA, but only one set of these rules applies to any particular proceeding. In the event the hearing can't reasonably be completed in one day, the arbitrator(s) will schedule the hearing to be continued on a mutually convenient date.

6. **Representation**
Any party may be represented by an attorney or other representative (excluding any Citi supervisory employee) or by himself or herself. For an employee or former

employee without representation, the AAA or FINRA, as applicable, may, upon request, provide reference to institutions that might offer assistance.

#### 7. Confidentiality of and attendance at hearing

The arbitrator(s) shall maintain the confidentiality of the hearings unless the law provides to the contrary. The arbitrator(s) shall have the authority to exclude witnesses, other than a party and the party's representative(s), from the hearing during the testimony of any other witness. The arbitrator(s) also shall have the authority to decide whether any person who isn't a witness may attend the hearing.

#### 8. Postponement

The arbitrator(s) for good cause shown may postpone any hearing upon the request of a party or upon the arbitrator's own initiative and shall grant such postponement when all of the parties agree thereto.

#### 9. Oaths

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator(s) may require a witness to testify under oath administered by any duly qualified person and, if it's required by law or requested by any party, shall do so.

#### 10. Stenographic record

In the event a party requests a stenographic record, that party shall bear the cost of such record. If both parties request a stenographic record, the cost shall be borne equally by the parties. In the event the claimant requests a stenographic record, Citi shall bear the cost of obtaining a copy of the record for itself. In the event Citi requests a stenographic record, Citi also shall bear the cost of providing a copy to the claimant.

#### 11. Arbitration in the absence of a party

Unless the law provides to the contrary, the arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement. An award shall not be made solely on the default of a party. The arbitrator(s) shall require the party who's present to submit such evidence as the arbitrator(s) may require for the making of the award.

#### 12. Discovery

Discovery requests shall be made pursuant to the rules of the AAA or FINRA, as applicable. Upon request of a party, the arbitrator(s) may order further discovery consistent with the applicable rules and the expedited nature of arbitration.

#### 13. Prehearing motions

The arbitrator(s) shall consider and rule on prehearing motions, including dispositive motions. Any ruling regarding such motion shall be made consistent with Section 19 of this Policy.

#### 14. Evidence

The arbitrator(s) shall be the judge of the relevance and materiality of the evidence offered; strict conformity to legal rules of evidence shall not be necessary.

#### 15. Evidence by affidavit and filing of documents

The arbitrator(s) may receive and consider the evidence of witnesses by affidavit but shall give it only such weight as the arbitrator(s) deems (deem) it entitled to after consideration of any objection made to its admission. All documents to be considered by the arbitrator(s) shall be filed at the hearing.

#### 16. Closing of hearing

The arbitrator(s) shall ask whether the parties have any further proof to offer or witnesses to be heard. Upon receiving negative replies, or if satisfied that the record is complete, the arbitrator(s) shall declare the hearing closed and the minutes thereof shall be recorded.

#### 17. Waiver of procedures

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these procedures hasn't been complied with, and who fails to state objections thereto in writing, shall be deemed to have waived the right to object.

#### 18. Time of award

The award shall be made promptly by the arbitrator(s) unless otherwise agreed by the parties or specified by law. The arbitrator(s) shall be instructed to make the award within 30 calendar days of the close of the hearing or as soon as possible thereafter.

#### 19. Award

**a. Form.** The award shall be in writing and shall be signed by the arbitrator(s). If either party requests, such award shall be in a form consistent with the rules of the AAA or FINRA, as applicable. All awards shall be executed in the manner required by law. The award shall be final and binding upon the parties, and judicial review shall be limited as provided by law.

**b. Scope of relief.** The arbitrator(s) shall be governed by applicable federal, state and/or local law. The arbitrator(s) shall have the authority to award compensatory damages and injunctive relief to the extent permitted by applicable law. The arbitrator(s) may award punitive or exemplary damages or attorneys' fees where expressly provided by applicable law. The arbitrator(s) shall not have the authority to make any award that's arbitrary and capricious or to award to Citi the costs of the arbitration that it's otherwise required to bear under this Policy.

**c. No precedential effect.** No arbitration finding, ruling, order, award or decision will have any preclusive effect as to any other issues or claims in any other arbitration or court proceeding unless the party asserting preclusion and the party against whom preclusion is asserted were also named parties in the original arbitration.

#### 20. Delivery of award to parties

The parties shall accept as legal delivery of the award the placing of the award or a true copy thereof in the mail addressed to a party or its representative at the last known address via certified mail, return receipt, personal service of the award, or the filing of the award in any manner that's permitted by law.

#### 21. The Federal Arbitration Act and enforcement

This Policy shall be governed by the Federal Arbitration Act (Title 9 U.S.C.) ("FAA"). The award of the arbitrator may be enforced under the terms of the FAA and/or under the law of any state to the maximum extent possible. If a court determines that the award isn't completely enforceable, it shall be enforced and binding on both parties to the maximum extent permitted by law.

#### 22. Judicial proceedings and exclusion of liability

**a.** Neither the AAA or FINRA, nor any arbitrator in a proceeding under this Policy, is a necessary party in judicial proceedings relating to the arbitration.

**b.** Parties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

23.  **Expenses and fees**

Unless otherwise precluded by applicable law, expenses and fees shall be allocated as follows:

        **a. Filing fees.** Citi shall pay any filing fee required by the AAA or FINRA, as applicable.

        **b. Hearing fees and arbitrator fees** Citi shall pay the hearing fee and arbitrator fee for the hearing.

        **c. Postponement/cancellation fees.** Postponement and cancellation fees shall be payable, at the discretion of the arbitrator, by the party causing the postponement or cancellation.

        **d. Other expenses**. The expenses of witnesses shall be paid by the party requiring the presence of such witnesses. All other ordinary and reasonable expenses of the arbitration, including hearing room expenses; travel expenses of the arbitrator, AAA or FINRA representatives, as applicable; and any witness produced at the arbitrator's direction, shall be paid completely by Citi.

        **e. Legal fees and expenses**. Each side shall pay its own legal fees and expenses subject to Paragraph 23 (a) and (b) above and applicable law.

The allocation of expenses as provided for in items "a" through "d" may not be disturbed by the arbitrator except where the arbitrator determines that a party's claims were frivolous or were asserted in bad faith.

### 24. Serving of notice

Any notices or process necessary or proper for the initiation or continuation of an arbitration under these procedures, for any court action in connection therewith or for the entry of judgment on an award made under these procedures, may be served on a party by mail addressed to the party or its representative at the last known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard thereto has been granted to the party. The AAA or FINRA, as applicable, and the parties also may use facsimile transmission, telex, telegram or other written forms of electronic communication to give the notices required by these procedures, provided that such notice is confirmed by the telephone or subsequent mailing to all affected parties. Service on the other party must be simultaneous with the filing and be made by the same means.

### 25. Time period for arbitration

Any proceeding under this Policy must be brought within the time period provided for within the statute(s) of limitations applicable to the claims asserted by the claimant.

### 26. Amendment or termination of arbitration policy

Citi reserves the right to revise, amend, modify or discontinue the Policy at any time in its sole discretion with 30 calendar days' written notice.  Such amendments may be made by publishing them in the Handbook or by separate release to employees and shall be effective 30 calendar days after such amendments are provided to employees and will apply prospectively only.  Your continuation of employment after receiving such amendments shall be deemed acceptance of the amended terms.

### 27. Interpretation and application of procedure

Except as otherwise provided by this Policy, the arbitrator shall interpret and apply these procedures as they relate to the arbitrator's powers and duties; all other procedures shall be interpreted and applied by the AAA or FINRA, as applicable. Except as otherwise expressly agreed upon, and except as otherwise provided by this Policy, any dispute as to the arbitrability of a particular claim made pursuant to this Policy shall be resolved in arbitration.

### 28. Severability

If any part or provision of this Policy is held to be invalid, illegal or unenforceable, such holding won't affect the legality, validity or enforceability of the remaining parts and each provision of this Policy will be valid, legal and enforceable to the fullest extent permitted by law.